**Tara C. GALABYA, Plaintiff–Appellant,**

v.

**NEW YORK CITY BOARD OF EDUCATION, Defendant–Appellee.**

**Docket No. 99–7046.**

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1999.

Decided Feb. 7, 2000.

**638**

Tara C. Galabya, Pro Se, Floral Park, NY, for Plaintiff–Appellant.

Michael D. Hess, New York, N.Y. (Larry A Sonnenshein and Julian L. Kalkstein, Corporation Counsel of the City of New York, New York, NY, of counsel), for Defendant–Appellee.

Before: JACOBS, McLAUGHLIN, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Plaintiff-appellant Tara Galabya appeals from the judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge*) entered December 17, 1998, granting the motion by defendant-appellee New York City Board of Education for summary judgment. *See Galabya v. New York City Bd. of Educ.*, 1998 WL 960304 (E.D.N.Y. Dec.10, 1998).

After appellee transferred him from one New York City school to another, appellant, a teacher, sued under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* On appellee's motion for summary judgment, Judge Nickerson ruled that no genuine issue of material fact existed as to whether appellant's transfer was an adverse employment action, and thus that appellant had failed to establish a prima facie case of age discrimination under the *McDonnell Douglas* "pretext" rubric. *Galabya*, 1998 WL 960304, at *5–6. For the reasons set forth in the discussion that follows, we affirm.

### I. Background

Appellant was born on December 14, 1924, and was 68 years old when he was informed on May 24, 1993, that he was being removed from his teaching position at Public School 4 in Queens, New York ("P.S.4"). P.S. 4 is a "cluster school" which includes a special education junior high school for "severely, emotionally disturbed" students. Appellant taught at the junior high school.

The City School District of New York licensed appellant to teach in New York City in 1973, granting him licenses in English and Pitman Stenography and Typewriting. Appellee began teaching at a special education school in 1974, and in 1977 he was awarded a "certificate of continuing eligibility" to teach "emotionally handicapped children."

Appellant's license to teach stenography and typewriting was revoked in 1982 for reasons irrelevant to this appeal. Following the revocation, appellant did not teach for four and one-half years. In 1987, appellant resumed teaching under a per diem substitute teacher license. It was this license that was in effect when he was hired to teach at P.S. 4's junior high school in October of 1989. In 1991, appellant's stenography and typewriting license was restored, and he resumed teaching under that license. The parties do not discuss, and the record does not show, what subject or subjects appellant taught at P.S.4, but he did not teach stenography or typewriting. According to Gene Nyitray, the principal of P.S. 4, it was not uncommon at that time to fill special education positions with teachers "who were, in fact, out of license."

In 1993, P.S. 4 elected to create a computer lab for the 1993–94 school year to be staffed by one full-time teacher. Central to that job would be the teaching of keyboarding, a subject that falls within the purview of typewriting. Nyitray filled the

position by choosing a fifty-three year old teacher, who, like appellant, was licensed to teach typewriting, but who had more seniority than appellant. With the computer lab assigned to another teacher, P.S. 4 had no open position for the 1993–94 school year that was within appellant's license area. Critically, a recent system-wide policy now permitted placement of teachers only within their licensed areas. Accordingly, appellant was "excessed." A teacher who is "excessed" is not fired, but rather is reassigned to another position in the school system.

Nyitray notified appellant that he had been excessed in a letter dated May 24, 1993. In papers dated August 31, 1993, appellant filed a complaint with the Equal Employment Opportunity Commission alleging that he had been excessed because of his age.

Appellant was not reassigned until September 20, 1993, eleven days into the 1993–94 school year. The Board of Education assigned appellant to Sarah Hale High School, but the assignment was rejected the next day by Sarah Hale's principal because that school was seeking a teacher for Gregg—rather than Pitman—stenography.

On September 27, 1993, appellant was reassigned to teach keyboarding at Van Arsdale High School. Van Arsdale, like Sarah Hale, is a mainstream high school. Virtually all of appellant's fourteen-year teaching career to that point had been spent in special education.

The transfer did not affect appellant's salary. There is no evidence in the record that the ultimate reassignment to Van Arsdale resulted in a loss of benefits, prestige, or opportunities for advancement. It is evidently undisputed that the facilities at Van Arsdale are inferior to those at P.S. 4 to the extent that teachers at Van Arsdale do not have their own classrooms, desks, or closets.

After a series of disputes at Van Arsdale, appellant took a leave of absence. He was eventually terminated in March 1998.

## II. DISCUSSION

"We review a district court's grant of summary judgment *de novo*, taking all factual inferences in favor of the non-moving party. Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir.1999).

■ The ADEA bans discrimination against employees because of their age. To prevail on an ADEA claim under the *McDonnell Douglas* "pretext" rubric, "the plaintiff must first establish a *prima facie* case by showing membership in a protected class, qualification for the position, an adverse employment action, and circumstances that give at least minimal support to an inference of discrimination." *Fagan*, 186 F.3d at 132 & n. 1 (stating standard for "pretext" case, as distinguished from "mixed motive" case).

Judge Nickerson granted summary judgment, in part, because he found as a matter of law that the transfer to Van Arsdale was not an adverse employment action within the meaning of the *McDonnell Douglas* analysis, but rather was a purely lateral transfer. *See Galabya*, 1998 WL 960304, at *5–6. It is that issue that we address in this opinion.

■ Appellant, appearing pro se, does not identify with precision what he considers the adverse employment action to have been, but his argument may reasonably be read as contending that he was denied assignment to the P.S. 4 computer lab, not assigned for the start of the 1993–94 school year, mis-assigned to Sarah Hale, and then ultimately assigned to Van Arsdale where he was forced to teach outside his area of expertise (special education) and at a school with inferior facilities to P.S. 4. We agree with Judge Nickerson

that this series of events does not constitute an adverse employment action.[1]

A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (relying on *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)).[2] To be "materially adverse" a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady*, 993 F.2d at 136. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.; see Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997) (ADEA protects the employee against "less flagrant reprisals" than termination or a reduction in wages and benefits).

In this case, there is no evidence that shows that the delay in reassignment, followed by the mis-assignment to Sara Hale, was an adverse employment action. Appellant does not allege that appellee denied him an available transfer, that appellee failed to pay his salary during the interim period, or that the delay in any way harmed his career. The unspecified inconvenience that appellant endured because of the relatively minor administrative miscues that occurred during the reassignment process is not cognizable as an adverse employment action. For similar reasons, the purportedly inferior facilities appellant faced at Van Arsdale do not render the reassignment an adverse employment action. As a matter of law, the disparity in working conditions—which reduces to the fact that teachers at Van Arsdale rotate through classrooms whereas teachers at P.S. 4 have their own classrooms—may be characterized as minor. *See Wanamaker*, 108 F.3d at 466 (indicating that "minor, ministerial stumbling block" cannot constitute an adverse employment action if it lacks "sufficiently deleterious" effect).

The transfer of appellant out of special education classes presents a more difficult question, but we conclude that the record is insufficient to permit the inference that this transfer constituted an adverse employment action. Appellant's failure to create a genuine issue of material fact becomes clear when his case is compared to *Rodriguez v. Board of Educ.*, 620 F.2d 362 (2d Cir.1980).

In *Rodriguez*, the plaintiff was a junior high school art teacher with twenty years of experience. In obtaining a master's and doctoral degree in art and art education, she had focused her studies on art programs for junior high school students. Her doctoral dissertation was titled, "A Model Arts Program for the Middle School of Eastchester School District Number 1." *Rodriguez*, 620 F.2d at 364. On being

---

1. Appellant also argues that the classes were larger at Van Arsdale than at P.S. 4, and that the commute to Van Arsdale was substantially longer than the commute to P.S. 4. In support of these arguments, appellant includes in the appendix evidence that was not before the district court. As appellant's arguments are unpreserved and rely on evidence outside the record, we have not considered them. *See Anchor Fish Corp. v. Torry Harris, Inc.*, 135 F.3d 856, 858 (2d Cir.1998) (except in exceptional case, appeals court will not consider unpreserved argument); *Katir v. Columbia Univ.*, 15 F.3d 23, 25 (2d Cir.1994) (in reviewing grant of summary judgment, federal appellate court may examine only the evidence that was before the district court).

2. *Richardson* is a Title VII case, but it is applicable here because both the ADEA and Title VII prohibit discrimination with respect to the "compensation, terms, conditions, or privileges of employment...." 29 U.S.C. § 623(a)(1); 42 U.S.C. § 2000e–2(a)(1); *see also Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998) (noting that ADEA and Title VII claims are analyzed under the same legal framework).

transferred to teach elementary school art, she proffered evidence to show that the two jobs were "profoundly different," so different, in fact, as to render her twenty years of experience "useless." *Id.* at 366. Additionally, the plaintiff proffered evidence that showed that the transfer was "in effect, a demotion that would constitute a serious professional setback and stigma to her career." *Id.* at 365. Notwithstanding this evidence, the district court granted summary judgment for defendants, finding that there had been no adverse employment action because plaintiff had not lost salary, benefits, seniority, or tenure. *Id.* ·at 365. Reversing this determination, we held that the transfer was a "radical change in the nature of the work," which thus constituted "interference with a condition or privilege of employment." *Id.* at 366.

█ *Rodriguez* may be read for the proposition that a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career. *Accord Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996) ("Obviously a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994) (to be adverse, change in work assignment must cause "materially significant disadvantage"); *Patrolmen's Benevolent Ass'n v. City of New York*, 74 F.Supp.2d 321, 335 (S.D.N.Y.1999) ("The key inquiry regarding involuntary transfers is whether the transfer constitutes a negative employment action tantamount to a demotion.") (internal quotation omitted).

In this context, appellant's argument rests on the premise that the special education, junior high school keyboarding class presented job responsibilities that were so different from the mainstream high school keyboarding class that the change in responsibilities was a setback to his career. We cannot adopt this conclusion as self-evident, and no evidence in the record supports it. There is no evidence detailing what responsibilities appellant performed during his years as a special education teacher. Similarly, appellant has not shown what particular expertise he developed during those years, nor how the transfer impacted on that expertise.[3] Indeed, appellant has not even proffered evidence to show what particular job responsibilities he would have had as the keyboarding instructor at P.S. 4, or how those responsibilities would have differed from those he had at Van Arsdale.

█ We are not suggesting that a plaintiff may prevail only if he or she produces as much evidence of adverse effect as the plaintiff did in *Rodriguez*. *Rodriguez* in no way establishes an evidentiary floor. The key, as stated in *Harlston*, is that the plaintiff must show that the transfer created a "materially significant disadvantage." *Harlston*, 37 F.3d at 382. Here, appellant has not met that standard. Appellant has not produced evidence to show that the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement. Accordingly, summary judgment was properly granted on the ground that appellant failed to create a genuine issue of material fact on the issue of whether his reassignment to Van Arsdale was an adverse employment action. *Cf. de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir.1996) (transfer to "less prestigious" Foster Care Unit from "elite" Adoption Unit constituted an adverse employment action); *Crady*, 993 F.2d at 133, 135–36 (transfer of bank employee to different branch with different position and

---

**3.** While not dispositive, it bears noting that unlike Rodriguez who had a master's degree and doctorate in the very subject from which she was transferred, appellant's graduate degree (a master's) is not in special education, but English.

responsibilities was not an adverse employment action where employee did not show that the new duties were "less significant" than the previous ones); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 265 (E.D.N.Y.1999) (notwithstanding teacher's "disdain" for new assignment, her transfer to pre-kindergarten class from first grade class was not an adverse employment action because teacher produced "no material evidence that her transfer obliged her to perform tasks that were less appropriate for her skills than her prior position or adverse to her in any other legally cognizable way") (citing *Cooper v. New York State Dep't of Human Rights,* 986 F.Supp. 825, 828 (S.D.N.Y. 1997)).

### III.   Conclusion

We have reviewed the remaining arguments raised on appeal and find them to be without merit.   For the foregoing reasons, we affirm the judgment of the district court.