**Oswald JOHNSON Plaintiff,**

v.

**EASTCHESTER UNION FREE SCHOOL DISTRICT Defendant.**

**No. 01 Civ. 2835(SHS).**

United States District Court, S.D. New York.

July 23, 2002.

---

---

*OPINION*

STEIN, District Judge.

Oswald Johnson, acting *pro se,* has commenced this action alleging that the Eastchester Union Free School District discriminated against him based on his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § § 621 *et seq.* when it changed the location and hours of his job. The school district has now moved pursuant to Fed. R.Civ.P. 56 for summary judgment dismissing the complaint. Because Johnson has failed to establish that the change constituted an adverse employment action, Eastchester's motion is granted and the complaint should be dismissed.

## BACKGROUND

### A. *Undisputed Facts* [1]

Oswald Johnson, age 69, is presently employed by the school district as a cleaner who cleans classrooms, bathrooms, and hallways. (Def.'s Statement of Facts ("DSOF") ¶ 1.) The school district embraces five school buildings within a 3.5 mile radius and employs 27 cleaners and custodians to clean, maintain, and secure the buildings. (DSOF ¶ 2.) It employs individuals to work both daytime and evening shifts. (DSOF ¶ 2.)

Custodial personnel, such as plaintiff, are members of a union that has entered into a collective bargaining agreement with the school district and provides, *inter alia,* that custodial personnel must—at the school district's expense—undergo a job related physical once every two years; it also gives the school district the right to "direct and assign employees and to regulate work schedules." (DSOF ¶ 11; Mills Decl. ¶ 6 and Ex. A at 15, 16; Melnyk Reply Decl. ¶ 5.)

As a result of the required physical examination, (Melnyk Reply Decl. ¶ 4; Johnson Aff. Opp'n ¶¶ 3, 10), it was discovered in May of 2000 that Johnson had a "very dense cataract in the right eye and a moderate cataract in the left." (Melnyk Reply Decl. ¶ 8 and Ex. B.) Johnson subsequently had successful cataract surgery on his right eye. (Melnyk Reply Decl. ¶ 10 and Ex. D.)

On the same day as the eye surgery, Johnson was notified by William Mills, age 54, the director of facilities, that his work assignment was being changed from the Waverly Kindergarten School to Eastchester High School and his hours were being changed from 11:00 a.m. to 8:00 p.m. at the kindergarten school to 3:00 p.m. to midnight at the high school. (Mills Decl. ¶¶ 11, 17 and Ex. B.) Johnson then requested—and was granted—a shift change to 2:00 p.m. to 11:00 p.m. to enable him to use public transportation. (Johnson Aff. Opp'n ¶ 8; DSOF ¶ 14.) Johnson was one of seven employees whose job assignments or shifts were changed that day. (DSOF ¶¶ 5, 8.) No one was hired to replace Johnson but a part-time worker, Nick Zanzano, age 78, was transferred to the Waverly Kindergarten School. (DSOF ¶¶ 9–10.)

### B. *Eastchester's Motion*

As noted above, Eastchester seeks summary judgment pursuant to Rule 56 on the grounds that Johnson has failed to set forth a *prima facie* case of discrimination in that he has failed to demonstrate an adverse employment action. Eastchester also asserts that Johnson has failed to demonstrate the existence of any animus based on age by Eastchester that motivated the decision to transfer Johnson and change his shift hours.

## DISCUSSION

Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable

---

**1.** Because plaintiff failed to submit a Local Civil Rule 56.1 statement, the Court deems those facts set forth in defendant's 56.1 statement to be admitted except to the extent that Johnson disputes them in his Affidavit in Opposition of Defendant's Motion for Summary Judgment ("Johnson Aff. Opp'n").

trier of fact could find in favor of the nonmoving party.'" *Allen,* 64 F.3d at 79 (citation omitted) (quoting *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. Fed. R.Civ.P. 56(e); *see also Legal Aid Soc'y v. City of New York,* 114 F.Supp.2d 204 (S.D.N.Y.2000). A nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). In short, a nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate where "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, the pleadings of a *pro se* plaintiff must be read liberally and interpreted "'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

Johnson alleges that Eastchester violated the ADEA, which proscribes discrimination against an employee because of his or her age. *Galabya v. New York City Bd. of Ed.,* 202 F.3d 636, 639 (2d Cir.2000). ADEA protection extends to employees who are at least forty years old. 29 U.S.C. § 631(a). As previously noted by this Court in an earlier opinion in this action, Johnson's complaint can arguably be seen to also raise a claim pursuant to the New York State Human Rights Law, N.Y. Exec. Law § § 290 *et seq. See Johnson v. Eastchester Union Free Sch. Dist.,* No. 01 Civ. 2835, 2002 WL 449584, at *2 (S.D.N.Y. Mar.22, 2002). Those claims are subject to the same analysis as claims brought pursuant to the ADEA. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913 (2d Cir. 1997).

To survive a motion for summary judgment at the conclusion of discovery proceedings, Johnson must establish a *prima facie* case of discrimination using the framework enunciated in *McDonnell Douglas. See Galabya,* 202 F.3d at 639. *See also McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Thus, Johnson must show (1) that he was in the protected age group; (2) that he was qualified for the position; (3) that he suffered an adverse employment decision; and (4) that the adverse employment decision occurred under circumstances giving rise to an inference of discrimination. *Norton v. Sam's Club,* 145 F.3d 114, 118 (2nd Cir.1998); *Courtney v. City of New York,* 20 F.Supp.2d 655, 658 (S.D.N.Y.1998).

█  There is no dispute as to the first two elements; Johnson is within the protected age group and was qualified for the position. It is the third element that Eastchester claims fails as a matter of law on the grounds that Johnson did not suffer an adverse employment action when he was transferred to another location and his shift was changed.

A plaintiff does not suffer an adverse employment action unless he endures a "materially adverse change in the terms and conditions" of his employment. *Galabya,* 202 F.3d at 640 (internal quotations

and citations omitted). The change must be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities' " to be materially adverse. *Id.* (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)). " 'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.' " *Id.* (quoting *Crady,* 993 F.2d at 136).

In cases such as this one, which involves an involuntary transfer, the "key inquiry" is "whether the transfer constitutes a negative employment action tantamount to a demotion." *Patrolmen's Benevolent Ass'n v. City of New York,* 74 F.Supp.2d 321, 335 (S.D.N.Y.1999). There must be a deprivation of opportunity or position. In the absence of bright-line rules, courts must thoroughly examine the facts of each case to assess whether the challenged employment action rises to the level of "adverse." *See Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997).

Johnson identifies his new hours and job location to be "very inconvenien[t]" for him. (Compl.¶ 8.) Inconvenience by itself, however, does not constitute an adverse job action. *See Galabya,* 202 F.3d at 640. *See also Sanchez v. Denver Public Schs.,* 164 F.3d 527 (10th Cir.1998) (transfer from one elementary school to another despite added commute time does not amount to an adverse employment action); *Spring v. Sheboygan Area Sch. Dist.,* 865 F.2d 883 (7th Cir.1989) (same). Apart from asserting the inconvenience of the change in location and hours, plaintiff has failed to adduce any evidence that those changes constituted a demotion. *See Weeks v. New*

*York State (Division of Parole),* 273 F.3d 76, 86 (2d Cir.2001); *Patrolmen's Benevolent Ass'n,* 74 F.Supp.2d. at 335.

Indeed, there is not even an allegation that Johnson suffered a reduction in wages or that his job responsibilities were altered in any way. Johnson offers no evidence to rebut the school district's assertion—amply supported by the record—that he suffered no diminution in compensation, employment benefits, seniority status or any other emolument of his employment. (DSOF ¶ 15; Mills Decl. ¶ 16.) A lateral transfer does not rise to the level of a materially adverse job action unless it "results in a change in responsibilities so significant as to constitute a setback in plaintiff's career." *See Galabya,* 202 F.3d at 641; *accord Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996). There is not a shred of evidence in this record that that is the situation here.

Plaintiff's mere dissatisfaction with the transfer and his preference for his former position at the Waverly Kindergarten School are insufficient to constitute a materially adverse employment action.[2] *See Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 264 (E.D.N.Y. 1999); *Harrison v. New York City Off-Track Betting Corp.,* No. 99 Civ. 6075, 2001 WL 1154691, at *3 (S.D.N.Y. Sept.28, 2001); *Garber v. New York City Police Dep't,* No. 95 Civ. 2516, 1997 WL 525396, at *7 (S.D.N.Y. Aug.22, 1997).

In sum, viewing the evidence in a light most favorable to Johnson, there is no evidence that he suffered an adverse employment action by a lateral transfer and change in hours and defendant therefore must prevail.

---

**2.** The fact that the parties dispute whether or not Johnson initiated the request for a transfer does not raise a genuine issue of fact that is material to this analysis.

■ Moreover, even if Johnson had established that his lateral transfer and shift change constituted a materially adverse employment action, he can point to no set of facts that give rise to an inference of discrimination such that he could establish that his age was a factor in the decision to transfer him and in fact "had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). It is undisputed that on the same day Johnson was transferred, the job assignments of seven other employees were changed. Four of those individuals—including plaintiff—were more than 40 years old and four others were under 40. In addition, William Mills, who ordered the transfers, was himself over forty. *See Marlow v. Office of Court Administration,* 820 F.Supp. 753, 758 (S.D.N.Y.1993). In addition, the union collective bargaining agreement gave Eastchester the authority to "direct and assign employees and to regulate work schedules." (Mills Decl. Ex. A., Art. XVI, at 16.) These facts demonstrate that rather than a determinative factor, Johnson's age was a neutral factor and thus there is no inference of discrimination.

Despite the fact that Johnson has failed to set forth a *prima facie* case of discrimination and that the totality of the evidence establishes that his transfer and concomitant shift change were not motivated by his age, for the sake of completeness, the Court will briefly address Johnson's claim that he suffered age discrimination because he was forced to undergo a physical examination. Both the American with Disabilities Act 42 U.S.C. §§ 12112 *et seq.* ("ADA") and the collective bargaining agreement permit job-related medical examinations. *See* 29 C.F.R. § 1630.14(c); Mills Decl. Ex. A., Art. XIV, at 15.

■ An employer "may require a medical examination . . . of an employee that is job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). An employer "must demonstrate some reasonable basis for concluding that the inquiry was necessary." *Fountain v. New York State Dep't of Correctional Servs.,* 190 F.Supp.2d 335, 339 (N.D.N.Y.2002). The employer must have a genuine reason to doubt that an employee can perform job-related functions. *Id.* Here, Eastchester was concerned that Johnson had been experiencing problems with his eyes which impaired his ability to read directions for the use of cleaning supplies. (Melnyk Reply Decl. ¶ 4 and Ex. A.) This concern was apparently justified since the examination revealed that Johnson had a dense cataract on one eye and a moderate cataract on the other eye which impaired his vision. (Melnyk Reply Decl. Ex. B.) Johnson ultimately chose to have the dense cataract surgically removed. The evidence establishes that Eastchester's decision requiring Johnson to undergo a physical examination was reasonably based rather than motivated by discriminatory animus.

**CONCLUSION**

Because Johnson has failed to establish that he suffered a materially adverse change in the terms and conditions of his employment, he has failed to set forth a *prima facie* case of discrimination and accordingly, Eastchester's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted and the complaint should be dismissed.