**Douglas BURNETTE, Plaintiff,**

v.

**NORTHSIDE HOSPITAL, Defendant.**

**No. 1:03–CV–2337–WSD.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 4, 2004.

Thus, dismissal pursuant to Rule 12(b)(5) would also be proper.

Larry Allen Pankey, Miles Mcgoff & Moore, Cumming, GA, for Plaintiff.

Sonja Faye Bivins, McGuirewoods, Atlanta, GA, for Defendant.

## ORDER

DUFFEY, District Judge.

This case is before the Court on Defendant Northside Hospital's ("Northside") Motion for Summary Judgment [18], Plaintiff Douglas Burnette's ("Burnette") Memorandum of Law in Opposition to Northside's Motion for Summary Judgment [24] and Northside's Reply to Burnette's Response to Its Motion for Summary Judgment [32].

## I. BACKGROUND

In this employment discrimination action, Burnette alleges that Northside, his former employer, retaliated against him

because of his complaints concerning on-call pay, in violation of the Fair Labor Standards Act ("FLSA").[1] The Court views all evidence and factual inferences in the light most favorable to Burnette, as required on a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett,* 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir.1993).

### A. Burnette's Employment with National Healthcare, Inc. and Georgia Baptist.

Burnette was hired by National Healthcare, Inc. in 1989 as a maintenance assistant at its hospital in Forsyth County, Georgia. In 1992, Georgia Baptist purchased the hospital and became Burnette's employer. In or about April 1999, Georgia Baptist and its staff, including Burnette, relocated to a new hospital facility nearby (the "Forsyth Hospital"). At some point during his employment with Georgia Baptist, Burnette's title changed from maintenance assistant to maintenance assistant manager.

In September 1999, Burnette assumed all of the maintenance department's on-call duties. When on-call, Burnette was required to provide Georgia Baptist with a telephone number where he could be reached. If contacted, he was required to return to the Forsyth Hospital within an hour. Burnette was compensated for on-call time even if he was not contacted to return to work. He also received premium pay for the time spent responding to a call. Georgia Baptist hired a second main-

---

1. Burnette originally asserted Northside failed to compensate him for on-call time in violation of the FLSA, as well as discriminated and/or retaliated against him in violation of the Age Discrimination in Employment Act ("ADEA"). As discussed in Sections II(C)

and (D), *infra,* Burnette has abandoned his FLSA claim for unpaid on-call time and his ADEA claims. The Court's statement of undisputed facts includes only those facts relevant to Burnette's FLSA retaliation claim.

tenance assistant, Bob Murret, in January 2000. After Murret's hiring, Burnette rotated on-call duties with Murret. In February 2002, Murret was replaced by Cameron Edwards ("Edwards"). Thereafter, Burnette shared on-call duties with Edwards.

### B. Burnette's Employment With Northside

Northside owns and operates a number of hospitals in Georgia, including its main hospital campus in Atlanta. In October 2002, Northside purchased the Forsyth Hospital from Georgia Baptist. Burnette and other Georgia Baptist employees were retained by Northside. Burnette's job duties did not change after the acquisition by Northside.[2]

As of October 2002, Burnette's maintenance department was managed by Larry Castleberry ("Castleberry"), the long-time chief engineer at Northside's Atlanta campus who was transferred to the Forsyth Hospital to facilitate the maintenance department's integration into Northside's operations. In March 2003, Northside hired Paul Schempp ("Schempp") as the permanent maintenance manager for the Forsyth Hospital.

### C. Changes in the On–Call System

John Cummings ("Cummings") is Northside's Facilities Services Director. He works at Northside's Atlanta campus and is responsible for the maintenance departments at the Atlanta campus and the Forsyth Hospital. Under Northside's policy, only maintenance managers and supervisors have on-call duties and receive on-call pay. Non-supervisory maintenance employees, including Burnette and Edwards, are not required to be on-call and thus do not receive on-call pay. If a non-supervisory employee is contacted by a manager to work outside of the employee's regular hours, and the employee agrees to return to work, he or she is paid a minimum of two (2) hours of overtime pay. Following Northside's acquisition of the Forsyth Hospital, Cummings wanted to bring the maintenance department at the Forsyth Hospital in line with the on-call system at the Atlanta campus. Thus, in March 2003, Cummings instructed Schempp to tell Burnette and Edwards that, as of April 1, 2003, they would no longer have on-call duties or receive on-call pay.[3]

In late-March or early-April 2003, Schempp discussed the changes to the on-call system separately with Edwards and Burnette.[4] Schempp advised Edwards that he and Burnette were no longer eligible to receive on-call pay because Schempp would assume all on-call duties and, if a need for after-hours work arose, he would contact Burnette and Edwards to see if they were available and willing to return to work. Edwards asked what would happen if he simply did not answer the telephone when Schempp called with a work request. Schempp replied that Edwards would be subject to disciplinary action. Edwards told Schempp he intended to complain to hospital administration about this change in the on-call system. Edwards told Burnette of his conversation with Schempp.

When Schempp and Burnette spoke, Burnette stated his belief that the changes to the on-call system, including Schempp's statement concerning disciplinary action, violated hospital policy. Burnette believed

---

**2.** Burnette's title changed from maintenance assistant manager to "Plant Stationary Engineer III (non-exempt)."

**3.** As part of its purchase of the Forsyth Hospital, Northside management agreed not to make any changes to employee compensation until April 1, 2003.

**4.** Burnette was on a medical leave of absence when Schempp spoke with Edwards.

that being disciplined for refusing to respond to a call amounted to being on call without receiving on-call pay.

## D. Burnette's and Edwards' Complaints to Human Resources

On April 16, 2003, Burnette submitted a written grievance to Northside's Human Resources department, complaining that the elimination of on-call pay was against Northside policy.[5] Sometime thereafter, Schempp informed Burnette that Cummings had "backed down" from his earlier instruction and that Burnette and Edwards would not be subject to disciplinary action if they did not respond to a telephone call requesting them to return to work.[6]

On or about April 29, 2003, Burnette and Edwards met with Sarah Cummings[7] and Teresa Dawson Collier from Human Resources to discuss their grievances. That same day, Human Resources issued a report concerning the grievances. The report recommended, among other things, that Northside reinstate on-call duties and pay for Edwards and Burnette. Cummings testified that the report made him angry both because of the recommendations made and the fact that Human Resources did not interview him prior to issuing the report.

In early May 2003, Cummings met with Burnette, Edwards, Schempp and Castleberry at the Forsyth Hospital.[8] Cummings instructed Burnette and Edwards to raise issues with Schempp and him before going outside the "chain of command" to Human Resources. The group also discussed the changes in the on-call system; specifically, that Burnette and Edwards no longer had on-call duties and thus would not receive on-call pay. The discussion became heated and the atmosphere of the meeting turned very hostile. Cummings testified that he felt Burnette's behavior toward him and Schempp at the meeting was angry, disrespectful and insubordinate.

## E. Reassignment to the Atlanta Campus

On or about May 7, 2003, Cummings spoke with Dwight Hill ("Hill"), Vice President of Northside, and Bridget Green ("Green"), Director of Human Resources[9] concerning Burnette's and Edwards' grievances, their attitude toward Schempp and their conduct during the May 2003 meeting. Cummings said he was unhappy with Human Resources' investigation of the grievances and their recommendations. Green told Cummings he was not required to implement the recommendations and she discussed with him ways to deal with

---

5. It appears from the record that Edwards also filed a written grievance with Human Resources. Because the parties have not pointed the Court to a copy of this grievance in the record, the content of the grievance is uncertain.

6. It is unclear from the record whether the conversation between Schempp and Burnette concerning Cummings' revision to the policy occurred before or after Burnette and Edwards filed their grievances. Given the ambiguity of the record on this issue, the Court assumes at this stage of the litigation that the second conversation took place after Burnette and Edwards filed their grievances.

7. Sarah Cummings is not related to John Cummings.

8. The record indicates that Cummings was aware of Burnette's and Edwards' grievances at the time of the meeting. It is unclear, however, whether Cummings also was aware of the report from Human Resources. The Court assumes at this stage of the litigation that Cummings was aware of both the grievances and the report at the time of the meeting.

9. Green is Cummings' supervisor.

the tension in the Forsyth Hospital maintenance department. Green suggested temporarily reassigning Burnette and Edwards to the Atlanta campus.

Cummings adopted this suggestion, hoping it would diffuse the tension in the maintenance department, allow Burnette and Edwards to observe the maintenance department at the Atlanta campus, allow Schempp to establish himself as the Forsyth Hospital maintenance manager and give Cummings a chance to observe and monitor Burnette's and Edwards' attitudes. Cummings told Burnette about the temporary reassignment on Friday, May 16, 2003. Cummings advised Burnette the reassignment was effective on Monday, May 19, 2003, and was motivated at least in part by Cummings' belief that Burnette and Edwards were causing a morale problem in the Forsyth Hospital maintenance department. Cummings stated the assignment would last three (3) months, six (6) months, or longer, and that Burnette would be allowed to return to the Forsyth Hospital when he improved his attitude. Burnette was informed the reassignment did not involve any change in pay, benefits or responsibilities. The only difference was that Burnette's working hours would change from 7:30 a.m. to 4:00 p.m. to 7:00 a.m. to 3:30 p.m.

Burnette objected to the reassignment. He stated that it did not make sense for him to be transferred to the Atlanta campus because he was a good employee and the reassignment would interfere with his family responsibilities. Burnette did not elaborate on his family responsibilities comment.

### F. Burnette's Discharge

On Monday, May 19, 2003, the day Burnette was required to report to the Atlanta campus, he called in sick. He was on sick leave through Wednesday, May 21, 2003. During this period, Burnette made several telephone calls to Schempp and Human Resources personnel, including Green, to complain about the reassignment. Burnette was told if he refused to comply with the reassignment, he likely would be discharged.

On Wednesday, May 21, 2003, Burnette faxed a letter to Human Resources protesting the transfer on the grounds that it would increase his commute, vehicle-maintenance expenses (gasoline and general "wear and tear"), and child-care expenses. Burnette also stated that he believed the transfer was in retaliation for his complaints about on-call pay.[10] Burnette did not report to work at the Atlanta campus on the morning of Thursday, May 22, 2003. Cummings called him on that day to tell him he was discharged. The notice of separation filed with the Georgia Department of Labor cited "job abandonment" as the discharge grounds.

### G. The Lawsuit

Burnette filed his Complaint on June 18, 2003, alleging that Northside violated the FLSA by (1) failing to compensate him for on-call time; (2) reassigning him to the Atlanta campus in retaliation for his complaints concerning on-call pay; and (3) constructively discharging him in retaliation for his complaints concerning on-call pay. Plaintiff has abandoned his "failure to compensate" claim but seeks to litigate his retaliation claims.

## II. DISCUSSION

Northside moves for summary judgment on Plaintiff's claims. Northside argues that Burnette's FLSA retaliation claim

---

10. Burnette also claimed the reassignment was in retaliation for his complaint about alleged age discrimination. As previously noted, Burnette has abandoned his claims for discrimination and/or retaliation under the ADEA.

fails because Burnette cannot establish a *prima facie* case of retaliation.

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Id.* at 1282.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." *Graham*, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog*, 193 F.3d at 1246.

### B. Burnette's FLSA Retaliation Claim

■ Burnette claims Northside retaliated against him by reassigning him to the Atlanta campus for complaining that Northside violated the FLSA when it changed its on-call policy. Retaliation claims under the FLSA are analyzed using the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA. *See Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir.2000). To establish a *prima facie* case of retaliation under the FLSA, Burnette must show: (1) he engaged in activity protected under the FLSA; (2) he subsequently suffered an adverse employment action; and (3) a causal connection existed between his protected activity and the adverse employment action. *Wolf*, 200 F.3d at 1342–43. If Burnette makes this *prima facie* showing, Northside must articulate a legitimate, non-retaliatory reason for its adverse employment action. (*Id.*) If Northside satisfies this requirement, the burden then shifts to Burnette to show that Northside's proffered legitimate, non-retaliatory reason is a pretext for unlawful retaliation. (*Id.*)

#### 1. Protected Activity

■ To state a prima facie case of retaliation under the FLSA, Burnette must show he engaged in conduct protected by the FLSA. An employee engages in protected activity if he "file[s] any complaint or institute[s] or cause[s] to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3). The Eleventh Circuit has held that informal complaints concerning conduct which implicates the FLSA qualify as protected activity. *See EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011–12 (11th Cir.1989) (finding that employees' informal complaints concerning unequal pay, which did not involve citation of the Equal Pay Act or the FLSA, constituted protected activity); *see also Debrecht v. Osceola County*, 243 F.Supp.2d 1364, 1374 (M.D.Fla.2003) (finding that employees' in-

formal complaints to employer concerning unpaid overtime constituted protected activity under the FLSA). In other words, the fact that an employee does not refer specifically to the FLSA does not mean his informal complaint is unprotected, so long as the complaint concerns the employer's wage and hour practices. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486–87 (10th Cir.1996) ("In order to engage in protected activity under [the FLSA], the employee must ... file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.") (citations omitted).

■ However, not all informal assertions of rights protected by the FLSA constitute protected activity. As under Title VII and other employment discrimination statutes, the complaining employee must have an objectively reasonable, good-faith belief that the employer's conduct is unlawful:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997) (holding employee's belief that a racially derogatory remark by a co-employee constituted unlawful discrimination under Title VII was not reasonable and thus his

complaint concerning the comment was not protected activity); *see also Standard v. ABEL Servs., Inc.*, 161 F.3d 1318, 1328–29 (11th Cir.1998) ("[T]o satisfy the first element of the prima facie case [of retaliation under the ADA], it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute."). If the employee's belief is not both objectively reasonable and in good faith, his complaint does not constitute protected activity. *Little,* 103 F.3d at 960; *Standard,* 161 F.3d at 1329.

■ Here, Burnette alleges that his verbal complaints and written grievance concerning the April 1, 2003 changes to the on-call system constituted protected activity. The FLSA requires employers to compensate its employee for on-call time only where the employee's on-call duties severely restrict the employee's use of his free time. *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 810 (11th Cir.1992). For several years, Burnette was compensated for on-call time regardless of whether he was called in to work or not. It is undisputed that when Schempp informed Edwards (and through him, Burnette) of the April 2003 changes to the on-call system, he stated that Edwards and Burnette would no longer receive on-call pay but would be subject to discipline if they did not respond when called in to work. Burnette immediately voiced his concern that this system amounted to being on-call without receiving on-call pay, and reiterated this concern in his April 16, 2003 grievance.

Burnette's complaint regarded conduct which may have violated the FLSA's requirement that employers compensate employees for on-call time where the employee's on-call duties severely restrict the employee's use of his free time. The fact that Burnette cited the Hospital's on-call policy rather than the FLSA is not dis-

qualifying—it is the substance, and not the form, of the employee's complaint that controls whether or not the complaint is protected under the FLSA. *White & Son Enters.*, 881 F.2d at 1011–12. The evidence in this case also shows Burnette's complaint was asserted in good faith, *i.e.*, he honestly believed Northside's on-call system, as amended by Cummings on April 1, 2003, was unlawful.[11] As noted above, however, there is a second prong of the test. Plaintiff's belief that Northside engaged in unlawful conduct also must be objectively reasonable for his complaint to be protected activity.

The FLSA requires employers to compensate an employee for on-call time only where the employee's on-call duties severely restrict the employee's use of his or her personal time. *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 810 (11th Cir.1992). Decisions from this Circuit and others indicate the "severely restricted" standard is a stringent one and employees are not entitled to on-call pay under the FLSA absent unusually onerous on-call duties. *See, e.g., Birdwell*, 970 F.2d at 808 (holding detectives' on-call duties did not severely restrict use of their free time where detectives who did not purchase their own beepers could not participate in outdoor activities such as fishing or hunting, leave town, or go on vacation while on call); *Bright v. Houston Northwest Med. Ctr.*, 934 F.2d 671 (5th Cir.1991) (holding biomedical equipment repair technician's on-call duties did not significantly restrict use of free time where technician was called in to work an average of five times per week and was required to report to the hospital within twenty minutes of being paged); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 744 (6th Cir.2000) (holding funeral embalmer's on-call duties did not significantly restrict use of free time where embalmer alleged his on-call duties prevented him from drinking alcohol, visiting his children, or boating, and that his meals, evening activities and sleep were disrupted by his on-call duties).

Under Northside's on-call system, Schempp was to receive all requests for after-hours work and contact Burnette and Edwards to see if they were willing to return to work. If both employees declined, Schempp performed the work. It is undisputed that Burnette and Edwards were not subject to disciplinary action for declining an after-hours work request, whatever the reason, and would receive premium pay if they accepted the work. The only requirement about which Burnette complained was that he notify Schempp of his decision regarding an after-hours work request. Put another way, Burnette's only on-call duty was to return any telephone calls from Schempp concerning after-hours work and tell him "yes" or "no." In light of this Circuit's law, the law of other circuits and plain common sense, no reasonable person could

---

11. Northside contends that Burnette's complaint concerning on-call pay could not have been in good faith because Burnette knew as of the time he filed his grievance that there would be no disciplinary action imposed for failing to respond to a call for after-hours work. (Reply in Support of Mot. for Summ. J. at 3.) This contention is without merit because, as discussed in Footnote 6, *supra*, there is a genuine issue of material fact as to whether Burnette learned of Cummings' revision to the policy prior to filing his grievance. Further, even assuming Burnette filed his griev-

ance after learning of Cummings' revision, this fact would not preclude a finding that the complaint was protected under the FLSA. *See Moore v. Freeman*, 355 F.3d 558, 562–63 (6th Cir.2004) (finding employee's informal complaint concerning unequal pay constituted protected activity under the FLSA and rejecting employer's contention that the pay issues were resolved by the time the employee was fired because "that argument goes to whether the complaint was the cause of the termination, not to whether [the complaint] was statutorily protected.")

believe that this minimal request by his employer severely restricted Burnette's use of his personal time or restricted it at all. *See Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1388 n. 2 (11th Cir. 1998) (holding employees' belief that grooming policy violated Title VII was unreasonable given the overwhelming federal case law upholding such policies, and rejecting employees' argument that charging them with knowledge of case law was unfair: "If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge."). Because Burnette's belief that Northside's conduct violated the FLSA was not reasonable, his complaint concerning on-call pay was not protected activity.

### 2. *Adverse Employment Action*

Even if Burnette could satisfy the first element of his *prima facie* case, his claim still fails because he cannot show that he suffered an adverse employment action. Burnette argues two adverse employment actions: (1) his reassignment to the Atlanta campus and (2) constructive discharge.

#### a. *Reassignment*

■ "[N]ot everything that makes an employee unhappy is an actionable adverse employment action." *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1118 (11th Cir.2001) (quoting *Smart v. Ball State Univ.,* 89 F.3d 437 (7th Cir.1996)). "To be considered an adverse employment action ..., the action must either be an ultimate employment decision or else must meet some threshold level of substantiality." *Stavropoulos v. Firestone,* 361 F.3d 610, 616–617 (11th Cir.2004) (examining whether employer's alleged conduct qualified as an adverse employment action in Title VII retaliation case). "Ultimate employment decisions include decisions such as termination, failure to hire, or demotion." *Id.*

The reassignment here was not an ultimate employment decision. It is undisputed the reassignment was lateral—it did not involve a change in pay, job duties or prestige. Burnette's objection to it is that the reassignment would have subjected him to a longer commute which would result in increased travel time and higher vehicle-maintenance and child-care expenses. The Court must decide whether a lateral reassignment which does not affect an employee's pay, job duties or job prestige but which increases the employee's commute and vehicle maintenance and child-care expenses is substantial enough to constitute an adverse employment action.

The Eleventh Circuit requires the employment action "to be objectively serious and tangible enough to alter the employee's compensation, terms, conditions or privileges of employment ...." *Stavropoulos,* 361 F.3d at 617 (citations omitted). The matters about which Burnette complains do not meet this substantiality threshold. In fact, an overwhelming number of federal courts have held that a reassignment or transfer which results in an increased commute, without more, is not objectively serious and tangible enough to meet the threshold of substantiality. *See, e.g., Sanchez v. Denver Pub. Schs.,* 164 F.3d 527 (10th Cir.1998) (holding that reassignment which increased employee's commute time from five or seven minutes to between thirty and forty minutes does not amount to an adverse employment action); *Anzaldua v. Chicago Transit Auth.,* No. 02–02902, 2002 WL 31557622, *4 (N.D.Ill. Nov. 15, 2002) (holding reassignment that "added up to an hour and a half each way to [the plaintiff's] daily commute" was insufficient to establish adverse employment decision); *Johnson v. Eastchester Union Free Sch. Dist.,* 211 F.Supp.2d 514, 517–18 (S.D.N.Y.2002) (plaintiff's "mere dissatisfaction" with

reassignment, based on "inconvenience of the change in location," was not actionable as adverse employment decision); *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F.Supp.2d 559, 563–64 (E.D.Pa.2000) (holding lateral reassignment of employee to another location did not rise to the level of adverse employment action even if it increased employee's commute: "While the court does not minimize the effect of a lengthened commute …, without some evidence of actual harm to the plaintiff's career or some indication that he could no perform the job, these factors do not create a prima facie case."); *Darnell v. Campbell County Fiscal Court*, 731 F.Supp. 1309, 1313 (E.D.Ky.1990) (holding that a transfer to a job requiring additional twenty-minute commute does not constitute an adverse employment action); *Baker v. Ala. Dept. of Pub. Safety*, 296 F.Supp.2d 1299, 1308 (M.D.Ala.2003) ("Where the changed work location does not even require one to change residences, these transfers generally merely create an inconvenience, which for purposes of Title VII is not actionable."); *see also Slay v. Glickman*, 137 F.Supp.2d 743, 752 (S.D.Miss.2001) (holding that reassignment requiring a three-hour commute did not constitute a "tangible employment action" in Title VII sexual harassment context). Other courts have gone so far as to hold that a lateral reassignment which requires the employee to relocate his residence does not constitute an adverse employment action. *See, e.g., Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (holding that "however unpalatable the prospect may have been to [the employee]", a reassignment which required employee to move from Denison, Iowa to Omaha, Nebraska did not rise to the level of an adverse employment action).

These authorities make it clear that, absent unusual circumstances, a lateral reassignment which results in an increased commute for the employee does not constitute an adverse employment action. This principle is in keeping with this Circuit's instruction that when a work assignment involves no serious and material change in the terms, conditions, or privileges of employment, a court should not act as "a super-personnel department" by second-guessing an employer's business judgment about where it assigns employees. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239, 1244 (11th Cir.2001) (reasoning that "[a] contrary view would potentially open the door to a wide variety of unfair work assignment claims that should not be litigated in the federal courts.")

Burnette's reassignment is indistinguishable from those of the employees in the cases cited above. Burnette argues his reassignment to the Atlanta campus would increase his commute an average of one or one and a half hours each way.[12] (Edwards Decl. ¶¶ 16, 17.) The Court recognizes this increased commuting time would have been an inconvenience for Burnette but the Court also recognizes that commutes of this length are common in large metropolitan areas like Atlanta. The commute does not constitute a serious and

---

12. Of course, because Burnette did not accept the reassignment, he could not testify as to the length of the commute to the Atlanta campus. Edwards, who did accept the reassignment, testified that his commute to the Atlanta campus took an average of one hour. (Edwards Decl. ¶ 16.) Edwards also testified that his return commute took "at least an hour and quite frequently took 2 to 2½ hours." (*Id.* at ¶ 17.) Edwards does not state the average duration of the return commute. In addition, although Edwards and Burnette appear to live in the same city—Cumming, Georgia—the record does not indicate whether Edwards' home is closer to, further away from, or equidistant from the Atlanta campus when compared to that of Burnette. (*Id.* at ¶ 16.) Based on this testimony, the Court will assume that the return commute took an average of one and a half hours.

material change in his terms, conditions or privileges of employment, and so does not rise to the level of an adverse employment action. That Burnette likely would incur additional vehicle maintenance and child-care expenses does not affect the conclusion that the reassignment was not an adverse employment action.

Burnette testified that, because of his wife's work hours, he was responsible for transporting their twelve-year-old son to school in the morning. (Resp. to Mot. for Summ. J. at 15.) Burnette does not provide any evidence that he could not drop his son off at school earlier or make other arrangements for his care. Even assuming third-party child care was necessary, Burnette has not put forth sufficient evidence of the cost of such care or by what amount the cost allegedly would have increased. There is no evidence in the record to establish that the increased vehicle maintenance expenses or the effect of the reassignment on his child-care responsibilities constituted or could under the circumstances here constitute a serious and material change in the terms and conditions of his employment. *Graham v. Fla. Dept. of Corr.*, 1 F.Supp.2d 1445, 1450 (M.D.Fla. 1998) (finding employee's unsupported allegation that her reassignment caused "hardship on her and her family" insufficient to establish that reassignment was an adverse employment action).

### b. *Constructive Discharge*

Burnette does not in his Complaint or in his response to Northside's motion challenge Northside's claim that failing to report to work at the Atlanta campus on May 22, 2003 amounted to a resignation or, as Northside characterized it in its notice of separation, "job abandonment." And he does not allege his discharge was in retaliation for protected activity. Instead, he appears to claim the reassignment was an independent act sufficient to state a claim for retaliation and also constituted a constructive discharge—that the terms of his employment under the reassignment were so intolerable he was forced to resign.[13] (*See* Complaint ¶ 42 ("Based upon Plaintiff speaking out on protected activity, the Defendant retaliated against and constructively discharged the Plaintiff by transferring him . . . ."); Joint Preliminary Report ¶ 5(b) ("Plaintiff alleges that Defendant unlawfully retaliated against him when he complained by transferring him to the Atlanta location and thereby constructively discharging him."); Resp. to Mot. for Summ. J. at 24 ("When Plaintiff had no choice but to refuse the transfer, the Defendant placed Plaintiff in the position that he would be fired. This is sufficient for a jury to find a constructive discharge.").)

Assuming an adverse employment action can be based on a theory of constructive discharge, Burnette would have to show the terms of his reassignment were so intolerable a reasonable person would have felt compelled to resign rather than accept the reassignment. *Stamey v. S. Bell Tel. & Tel. Co.*, 859 F.2d 855, 860 (11th Cir. 1988); *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1282 (11th Cir. 2003). If the reassignment does not satisfy this standard, Burnette's resignation does not qualify as a constructive discharge and his *prima facie* case of retalia-

**13.** Neither party addresses whether the FLSA recognizes a retaliation claim based on constructive discharge. Circuits other than ours have held that a plaintiff may pursue an FLSA retaliation claim alleging that a resignation constituted a constructive discharge. *See, e.g., Ford v. Alfaro*, 785 F.2d 835 (9th Cir. 1986). The Eleventh Circuit recognizes retal-

iation claims based on a theory of constructive discharge in similar contexts. *See, e.g., Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir.2000) (Title VII retaliation claim). This Court only assumes that Burnette may pursue a claim of retaliation under the FLSA based on a theory of constructive discharge.

tion fails. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 775 (4th Cir.1997) ("[W]hen an employee voluntarily quits under circumstances insufficient to amount to a constructive discharge, there has been no adverse employment action.").

A long line of courts have held that a reassignment resulting in an increased commute does not satisfy the constructive-discharge standard. *See, e.g., Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F.Supp.2d 559, 563–64 (E.D.Pa.2000) (holding that a reassignment which added up to an hour and half each way to employee's commute "may be an inconvenience to [the employee], but it is not sufficient to constitute a constructive discharge."); *Darnell v. Campbell County Fiscal Court*, 731 F.Supp. 1309, 1313 (E.D.Ky.1990) (holding that a transfer to a job requiring additional twenty-minute commute does not constitute a constructive discharge). Here, the result is no different.

Burnette alleges the reassignment would have added an hour or an hour and a half each way to his commute, as well as increased his vehicle-maintenance and child-care expenses. For the same reasons discussed above regarding whether the reassignment constituted an adverse employment action, however, the conditions of the reassignment were not so intolerable a reasonable person would have been compelled to resign rather than accept them. The Court notes that Edwards, Burnette's co-employee, accepted the reassignment and worked at the Atlanta campus under these same conditions. While not dispositive, the fact that an employee in nearly identical circumstances did not feel compelled to resign when he received the same reassignment as Burnette is persuasive evidence that the reassignment's terms and effects were not so intolerable a reasonable person would be compelled to resign.

The Court having found Burnette's complaints concerning on-call pay did not constitute protected activity, and his reassignment did not constitute an adverse employment action, either independently or as a constructive discharge, Burnette fails to establish a *prima facie* case of retaliation as a matter of law.[14] Accordingly, summary judgment on his claim for retaliation under the FLSA is GRANTED.[15]

14. Burnette does not assert he put forth direct evidence of retaliation. Even if he did, the result here would be the same. Plaintiffs may demonstrate unlawful retaliation using either direct or circumstantial evidence. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir.1997). Under either framework, the plaintiff must show that the employer's alleged retaliatory conduct constituted an adverse employment action. *Brown v. Chicago Transit Auth.*, No. 04–1501, 2004 WL 2202536, at *1 (7th Cir. Sep.23, 2004).

15. Even if the Court found that his reassignment constituted an adverse employment action, and that Northside's legitimate, non-retaliatory reasons for the reassignment were a pretext for unlawful retaliation, it is uncertain what damages Burnette ultimately could recover. Burnette's alleged damages with respect to retaliation—lost wages, benefits, seniority, etc.—all stem from his separation from employment. As discussed in Section II(B)(2)(b), *supra*, however, Burnette's theory of constructive discharge fails, and Burnette has not otherwise challenged his May 23, 2003 separation from employment as unlawful. Therefore, Burnette could not recover damages stemming from his separation, but only those damages stemming from the reassignment. Burnette has not alleged that he suffered any damages as a direct result of his reassignment. It is undisputed that the reassignment did not involve a change in pay, seniority or benefits. In addition, because Burnette did not work a single day at the Atlanta campus, he did not incur any gasoline, vehicle-maintenance or child-care expenses because of the reassignment. *See Shealy v. Winston*, 929 F.2d 1009, 1013 n. 2 (4th Cir.1991) (noting that, where employee alleged that reassignment to position with same salary and benefits was discriminatory, employee "would ... face the barrier of prov-

## C. Burnette's ADEA Claims

Burnette alleges Northside discriminated him on the basis of his age and retaliated against him on the basis of complaints concerning age discrimination in violation of the ADEA. (Complaint ¶¶ 28–35.) Northside moved for summary judgment on these claims on the grounds that, as a matter of law, Burnette cannot establish a *prima facie* case of discrimination or retaliation. (Mot. for Summ. J. at 18–24.) In his response to Northside's motion, Plaintiff withdraws his ADEA claims. (Resp. to Mot. for Summ. J. at 1, n. 1.) Accordingly, summary judgment on these claims is GRANTED.

## D. Burnette's FLSA Claim for Unpaid On–Call Time

Burnette also alleges Northside failed to compensate him for time spent performing on-call duties. (Complaint ¶¶ 36, 41; Joint Preliminary Report ¶ 1(b).) Northside moves for summary judgment on this claim on the grounds that Burnette was not entitled to compensation under the FLSA for time spent on-call, either before or after the April 1, 2003 changes to the on-call system. (Mot. for Summ. J. at 24–26.) Northside concedes it compensated Burnette for on-call time prior to April 1, 2003, but contends that in doing so it went "above and beyond" the FLSA's requirements. (*Id.* at 25.) Burnette failed to respond to Northside's motion for summary judgment on his claim for on-call pay.

Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party. *Bute v. Schuller Int'l, Inc.*, 998 F.Supp. 1473, 1477 (N.D.Ga.1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); *Welch v. Delta Air Lines, Inc.*, 978 F.Supp. 1133, 1137 (N.D.Ga.1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims."). Accordingly, summary judgment on this claim is GRANTED.[16]

## III. CONCLUSION

For the foregoing reasons, the Court hereby orders that Northside's Motion for Summary Judgment is GRANTED and the Court DIRECTS that judgment be entered in favor of Defendant Northside Hospital.

---

ing any damages" even if he could show that the reassignment constituted an adverse employment action).

16. Even if Burnette had opposed Northside's motion on this claim, summary judgment still is warranted. Burnette has not put forth any evidence that his on-call duties undermined

his ability to engage in personal activities. "[A]n employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 810 (11th Cir.1992). Accordingly, Northside was not required to compensate Burnette for on-call time.