**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3970
_____

BILLY A. STEWART,
                              Appellant,

v.

UNION COUNTY BOARD OF EDUCATION,
a corporate body of the State of New Jersey;
NICHOLAS ARDITO, individually
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-13-cv-00800)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 5, 2016

Before:    FUENTES, VANASKIE and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 13, 2016)

_____

OPINION*
_____

PER CURIAM

Appellant Billy A. Stewart appeals from orders of the District Court granting summary judgment to the defendants and denying his motion for reconsideration. For the reasons that follow, we will affirm.

Stewart, also known as "Tony Stewart," filed suit pro se in February, 2013 in the United States District Court for the District of New Jersey against the Union County, New Jersey Board of Education ("School Board") and District Director of Security Nicholas Ardito. Stewart, a full-time security officer at Union High School, alleged that Ardito and the School Board had singled out, harassed and discriminated against him on the basis that he is African American, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, et seq. He further alleged that the defendants retaliated against him after he filed a Charge of Discrimination with the Equal Employment Opportunity Commission in February, 2011.

On September 1, 2010, the School Board hired Ardito as its first district-wide Director of Security. Prior to that time, Vice Principal David Shaw supervised the High School's security officers, including Stewart, and Stewart's record was unblemished during Shaw's tenure. In his complaint Stewart claimed that the following actions taken by Ardito and/or the School Board were adverse to him and evidence of racial discrimination: he was the only African American assigned to work outside during the winter when conditions were unbearable; he was disciplined for violating the dress code; his whereabouts were closely monitored and he was singled out for a reprimand in January, 2011 for being away from his post; when he managed to successfully grieve the January, 2011 reprimand, Ardito transferred him from his job at the High School, where

2

he had worked for over 10 years, to the less prestigious Kawameeh Middle School; he was denied overtime opportunities; he was inappropriately questioned regarding receiving free items from the Athletic Department; and he was not permitted to leave early to coach track and football.

After Stewart amended his complaint to assert that Ardito had made certain racially offensive remarks, the defendants answered it and discovery ensued. Stewart was deposed by the defendants. After an attempt at settlement failed, the defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), arguing that there was no triable issue and that they were entitled to judgment as a matter of law. In support, they submitted a Statement of Material Facts, which consisted of 156 numbered paragraphs, emphasizing Stewart's own deposition testimony and sworn statements made by Stewart's fellow security officers, John Desrosiers, Carmen Marano, Gregory Solla, Carlos Esquivel, James Frazier, and Jean Miller. In addition, defendant Ardito submitted a sworn affidavit.

Stewart submitted a response in opposition to summary judgment, and in support of his opposition, he attached numerous exhibits, including (1) a report dated May 20, 2011 from Verita LLC: Neutral Workplace Investigations (the "Verita Report");[1] and (2) a letter from Stewart's former attorney to the School Board dated March 7, 2011 (the "Oxfeld Cohen Letter"), in which the attorney outlined "a number of incidences" that had recently occurred and "which, at best, indicate incredible stupidity on the part of the Administration and, at worst, are evidence of intentional racial discrimination." Stewart

---

[1] The investigation was commissioned by the School Board after Stewart filed his EEOC charge.

did not depose anyone, not even defendant Ardito, nor did he submit any sworn affidavits.

In an order entered on September 23, 2015, the District Court, in a thorough opinion, awarded summary judgment to the defendants, agreeing with them that there was no material factual dispute that needed to be resolved by a jury. Crucially, the District Court determined that Stewart had neglected to respond to the defendants' Rule 56.1 Statement of Material Facts, and, thus, pursuant to Local Civil Rule 56.1, the material facts asserted by the defendants were deemed undisputed for purposes of the summary judgment motion. See also Fed. R. Civ. P. 56(e)(2). Then, applying established federal and state law to the summary judgment record, the Court specifically addressed Stewart's allegations and determined that he had not suffered an actionable adverse employment action. Relying primarily on Stewart's own deposition testimony, Ardito's sworn affidavit, and the sworn affidavits of fellow security officers Esquivel, Solla, Frazier, Marano, and Desrosiers, the Court determined that these items established indisputably that Stewart had always worked outdoors, even before Ardito became his supervisor, and that, in any event, the assignment to outdoor duty had no impact on his compensation or status; that the one-time reprimand for wearing black jeans instead of black pants had no effect on Stewart's compensation or status; that he was properly reprimanded for being away from his post; that all of the security guards were questioned about receiving free items from the Athletic Department and Stewart was not singled out in this respect; that the transfer to the Middle School did not change the terms and conditions of his employment; and that the loss of overtime opportunities was minimal and inconsequential. The Court concluded that Stewart's retaliation claim could not be

4

sustained because the School Board's changes to overtime occurred before he filed his EEOC charge, and the summary judgment record showed that Stewart was not prevented from coaching track or football. The Court also dismissed all claims against Ardito in his individual capacity, and rejected Stewart's claim for punitive damages under NJLAD.[2]

Stewart timely moved for reconsideration, asserting that, due to financial hardship, he did not have the opportunity to complete any depositions of his own and thus could not rebut the defendants' assertions of material fact. He stated that he was unable to afford a stenographer, and he urged the Court to consider the Verita Report, the Collective Bargaining Agreement, the Oxfeld Cohen Letter, and certain other exhibits, and award him a trial on his claim of discrimination. He specifically stated that Greg Solla was "a witness to everything," and that James Frazier had "been used to cover up illegal practices." In an order entered on November 10, 2015, the District Court denied reconsideration, stating only that there was no proper basis for it.

Stewart appeals. We have jurisdiction under 28 U.S.C. § 1291. In his Informal Brief, Stewart argues that the District Court did not explain its decision, that he should not be held to the same standards as a practicing lawyer, that there is a list of witnesses totaling 40-50 people he has never had the opportunity to question, that he was never able to cross-examine the School Board's witnesses, that Ardito's stated reason for transferring him to the Middle School was a pretext for discrimination, and that the

---

[2] The District Court's determination that Ardito could not be held individually liable under Title VII is correct, see Le v. Univ. of Pennsylvania, 321 F.3d 403, 408 n.3 (3d Cir. 2003), and is affirmed. Any challenge to the District Court's determination that Ardito could not be held individually liable under NJLAD, and determination that Stewart is not entitled to punitive damages under NJLAD, is waived because Stewart failed to raise these issues in his Informal Brief. See Laborers' Int'l Union of North America v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief....").

transfer cost him $8,000 in lost income for the year 2011. He has also called our attention to various items that he previously offered in support of his opposition to summary judgment, including the Verita Report and the Oxfeld Cohen Letter.

We will affirm. We review a District Court's grant of summary judgment *de novo*. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). We may affirm on any basis which finds support in the record. Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and we are required to view the facts in the light most favorable to the non-moving party, here Stewart, and make all reasonable inferences in his favor, see Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Moreover, credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor may a District Court weigh the evidence. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

Nevertheless, the nonmoving party may not rest on mere allegations or denials, Fed. R. Civ. Pro. 56(e)(2), (3). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). To defeat the School Board's motion for summary judgment, Stewart was required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c) (setting forth requirements for supporting or opposing party's assertion that a

6

fact cannot be or is genuinely disputed).  Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

To prevail on a claim of discrimination pursuant to Title VII, a plaintiff must first establish a prima facie case.  A prima facie case of disparate treatment on the basis of race requires that a plaintiff show the following: (1) he belongs to a protected class; (2) he is qualified for the position; (3) he suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  New Jersey courts have adopted this framework for analyzing claims of discrimination under NJLAD.  See Viscik v. Fowler Equipment Co., Inc., 800 A,2d 826, 833 (N.J. 2002).

The District Court determined that Stewart was a member of a protected class and that he was qualified to be a security officer, but that he had not suffered an actionable adverse action.  An actionable adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  We agree with the District Court that the summary judgment record shows that there was no triable issue with respect to whether Stewart suffered an adverse employment action in connection with his outdoor patrol duty; the reprimand for a dress code violation; the

7

alleged excessive monitoring and reprimand for absence from his post; and the questioning relating to whether or not he had received free items from the Athletic Department. Moreover, we are not persuaded that additional discovery or cross-examination of witnesses would change that determination. The January, 2011 reprimand for being absent from his post without authorization comes closest to being an adverse employment action, but the reprimand was not ultimately placed in Stewart's personnel file and so did not have the capacity to change his employment status.

With respect to whether Stewart's transfer to the Middle School was an adverse action, we note that, on February 4, 2011, Stewart and Greg Solla, who is white, were transferred from the High School to Kawameeh and Burnett Middle Schools, respectively. Carlos Esquivel, who is Hispanic, and James Frasier, who is African-American, were transferred from those middle schools to the High School.[3] In support of the defendants' summary judgment argument that Stewart's transfer was neither an adverse employment action nor motivated by racial discrimination, Ardito, in his sworn affidavit, cited the following reasons for transferring the officers: (1) Esquivel is fluent in Spanish and was transferred to the High School to assist with the growing number of Spanish-speaking students at the High School; (2) it was more convenient for Frazier, who was Vice-President of the Union Township Education Association ("UTEA") at the time, to be stationed at the High School, where UTEA-related events were often held; and (3) Stewart was transferred to accommodate the physical demands of Kawameeh's disabled students and because he is an "excellent de-escalator." Ardito stated that Solla

---

[3] The union filed a grievance on Stewart's and Solla's behalf, arguing that the transfers violated the terms of the Collection Bargaining Agreement. The grievance was resolved with the transfers remaining in place.

was transferred to Burnett Middle School because of his ability to communicate with students and because his investigative skills were needed there. Ardito also went on to say that Stewart and Solla had the most seniority and it was his belief that "too much familiarity" with a school is "not beneficial."

Ardito stated that, in any event, the transfers had no effect on Stewart's salary or other benefits, and he denied that the transfers were racially motivated. John Desrosiers stated in his affidavit that he had "never witnessed Nick Ardito treat Tony Stewart … in a harassing manner, or treat any individual differently because of his or her race," and that he had "not witnessed any conduct that would suggest racial animus by Nick Ardito or the Union Township Board of Education." James Frazier stated in his affidavit that as "someone who happens to be African-American, I have no reason to believe that Tony has been the victim of race discrimination by Nick Ardito or the Union Township Board of Education," and that he had never witnessed Ardito treat Stewart differently because of his race.

In opposition to the defendants' motion for summary judgment, Stewart submitted a copy of the Verita Report. According to the Verita investigator and Report author, Lori B. Katz, Esquire, all of the security officers felt that the transfers were detrimental to the students because relationships are important in successfully carrying out the duties of a school security officer. The Verita Report further states that a multiple-page petition had been filed asking that Stewart be transferred back to the High School. The Verita Report states that James Frazier said that he believed that the transfers were made because Ardito did not want Stewart at the High School, that Ardito wanted to get back at Stewart because he (Ardito) had been forced to retract the January, 2011 letter of reprimand, and

9

that he (Frazier) was a "pawn" and was selected to replace Stewart at the High School because he is black. The Verita Report states that Greg Solla said that he too was a "sacrificial lamb" in the matter of the transfers. The Verita Report states that Johnny Desrosiers said that Ardito wanted to "get rid of Stewart" and that Ardito was "toughest" on Stewart and that he believed that race played a role.

The District Court made no mention of the Verita Report, concluding, as matter of law, that Stewart's transfer to the Middle School was lateral in nature, involved no reduction in salary or benefits, did not materially change the terms and conditions of his employment, and thus was not an actionable adverse action. We agree with the District Court. Employment actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions. See Ellerth, 524 U.S. at 761 (collecting cases stating that bruised ego and reassignment to more inconvenient job did not constitute adverse employment action); Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000) (delay in reassignment, transfer to purportedly inferior facilities, and change in type of students taught are not adverse employment actions). Stewart's argument that the Middle School assignment was less prestigious, and that the High School needed and valued him is insufficient to show an actionable adverse employment action under the law. Because there was no actionable adverse action, it was not necessary for the District Court to consider whether an adverse employment action had occurred under circumstances that give rise to an

inference of racial discrimination, <u>Hicks</u>, 509 U.S. at 506-07; <u>Burdine</u>, 450 U.S. at 253, and thus not necessary to specifically address the Verita Report.[4]

With respect to Stewart's allegation of lost overtime opportunities, the Oxfeld Cohen letter written on Stewart's behalf states that Ardito appeared to have deliberately attempted to either reduce or eliminate Stewart's overtime by changing the method for assigning overtime from seniority-based to a rotation system using first names (and then using "Tony" instead of "Billy"), and then by transferring Stewart to the Middle School where overtime was then not authorized for any security officers. In addition, Stewart argued in his Informal Brief that Ardito's actions cost him $8,000 in lost income for the year 2011, and he testified at his deposition that his lost overtime for a three-year period was $11,986.00. (<u>N.T.</u>, 12/9/13, at 244.). On the other hand, in their summary judgment motion, the defendants admitted that Stewart may have been skipped once for overtime assignment, but they also persuasively demonstrated that, before Stewart's transfer to the Middle School, overtime was available exclusively for security officers working at the High School. Under this "building-based" system, overtime at the High School was

---

[4] In any event, the Verita Report is not competent summary judgment evidence. <u>See</u> Fed. R. Civ. P 56(c), (e). It is inadmissible hearsay because it describes statements made by Frazier, Solla, and Desrosiers to a third party, and it was submitted by Stewart for the truth of the matter asserted. Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). Simply calling the Verita Report to the attention of the District Court was not the proper way to oppose a motion for summary judgment. <u>See</u> <u>Smith v. City of Allentown</u>, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). The Verita Report likely provided fertile ground for cross-examination of Frazier and Desrosiers in that their affidavits are inconsistent with their statements to the Verita investigator on the issue of whether race played a part in Stewart's transfer, but Stewart failed to depose these or any other witnesses, and his pro se status does not excuse this failure. Civil litigants, including pro se litigants, generally bear their own deposition costs.

distributed only among the officers, including Stewart, that were assigned to the High School. Around the same time as the personnel transfers occurred, the School Board switched from a "building-based" overtime system to a "district-wide" scheme in which overtime opportunities rotated among security officers throughout the entire district, including the Middle School. As he admitted in his deposition, the change from a "building-based" to "district-wide" overtime scheme resulted in Stewart's continued eligibility for overtime even after he was transferred to the Middle School.[5]

Nevertheless, in their Statement of Material Facts, which the District Court deemed undisputed, the defendants appear to have admitted that Stewart's overtime for the school year 2010-2011 was only $3,645.27, compared to $8,078.73 for 2009-2010 and $8,515.60 for 2011-2012. (Defendants' Statement of Material Facts, ¶ 98.) This amounts to a loss of overtime for Stewart of about $5,000 for the school year 2010-2011, and may well constitute a prima facie showing of an adverse employment action. Accordingly, we will consider whether this arguably adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. To survive a summary judgment motion where the defendants have offered legitimate reasons for their actions, as they did here, a plaintiff must submit evidence which "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). A plaintiff may support an assertion that an invidious discriminatory reason was more likely than not a determinative cause by showing that "the employer has

---

[5] Ultimately, there was a change back to "building-based" overtime in 2012 but it was initiated and requested by the security officers' union and not by Ardito and the School Board.

treated more favorably similarly situated persons not within the protected class." <u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 413 (3d Cir. 1999). We have carefully reviewed the summary judgment record and made all reasonable inferences in Stewart's favor, <u>see</u> <u>Armbruster</u>, 32 F.3d at 777, but the record shows only that there were many changes to overtime, and that the changes had an impact -- sometimes positive and sometimes negative -- on all of the security officers. It does not show favorable treatment of white or Hispanic security officers, and thus would not be a basis for a jury to conclude that Ardito's and the School Board's alleged mishandling of Stewart's overtime opportunities was motivated by racial animus.[6]

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment to the defendants and denying Stewart's motion for reconsideration.

---

[6] We further agree with the District Court that summary judgment was proper on Stewart's claim of retaliation, and that reconsideration of the denial of summary judgment was not warranted.

13