DEBORAH A. BATTS, United States District Judge.
On July 20, 2017, Plaintiff Ashlynn Alexander filed a Complaint against Defendants Possible Productions Inc. ("Possible"), Showtime Pictures Development Company ("Showtime"), and Travis Rehwaldt, asserting claims for sex discrimination under the New York City Human Rights Law ("NYCHRL") (Count 3) and for retaliation under Title VII (Count 1), the New York State Human Rights Law ("NYSHRL") (Count 2), and NYCHRL (Count 4), stemming from her work as a body double on the television show The Affair. Defendants filed the instant Motion to compel the arbitration of Plaintiff's claims or, in the alternative, to dismiss them. For the following reasons, the Court DENIES Defendants' Motion to Compel Arbitration and DENIES their Motion to Dismiss.
I. BACKGROUND
A. Allegations Relevant to Employment Discrimination
Plaintiff alleges that she was employed by Showtime and Possible from October 2013 to September 2015 as a body double for the character of Alison on the television show The Affair. (Compl. ¶ 36.) Rehwaldt was an assistant director on the show and was allegedly Plaintiff's supervisor. (Id. ¶¶ 37-38.)
At the end of filming each day, all cast and crew members received a call sheet, created by Rehwaldt, which listed each person's role and a detailed schedule for the next day's work. (Id. ¶ 39-40.) Generally, the call sheets listed Plaintiff's role as "Alison Body Double." (Id. ¶ 42.) Plaintiff alleges that on September 17, 2015, she received a call sheet (the "Call Sheet") from Rehwaldt describing her role as, "Alison Sexytime Double." (Id. ¶¶ 44-45.) Defendants have attached the purported Call Sheet to their Motion to Dismiss. (Declaration of Mary Eaton ("Eaton Decl.") Ex. F.) That document lists Plaintiff's name under a column entitled cast with her character listed as "Alison Double" in the column next to her name. Lower down on the *191 same sheet in a section entitled "Instructions," the Call Sheet says: "MAKEUP/HAIR: Alison sexy time Double. Sc. B: Noah's Jacket." (Id. )
Plaintiff alleges that she felt humiliated after receiving the Call Sheet because she thought it reduced her to a sexual object. (Compl. ¶¶ 45-47.) The day after she received the Call Sheet, she met with Rehwaldt to complain of what she felt was sexual harassment. (Id. ¶ 48.) Plaintiff told him that he had sexually harassed her, that his actions humiliated her in front of her coworkers, and that she was concerned she would not be paid properly for her work the day before. (Id. ¶ 49.) Rehwaldt allegedly admitted that the language he used on the Call Sheet was inappropriate but also told her that she could be replaced easily. (Id. ¶ 50.) Plaintiff did not complain further because she was allegedly afraid that she would lose her job. (Id. ¶ 52.)
On September 24, 2015, Plaintiff allegedly "received notice that she was no longer needed" on set for The Affair. (Id. ¶ 53.) When she asked for an explanation, she was allegedly told that she did not have a good hair match with the actress playing Ashley and that the show was looking for someone else to fill her role. (Id. ¶ 54.)[1] Plaintiff thought that this explanation was untrue because she had been wearing a wig for the duration of her work in the role without issue and because the actress hired to replace her in the role also allegedly wears a wig. (Id. ¶¶ 55-56.)
B. Relevant Contractual Provisions
Showtime allegedly hired Plaintiff pursuant to a Performer's Freelance Television Contract (the "Contract"). (Eaton Decl. Ex. A.) The Contract incorporates certain provisions of the Screen Actors Guild Television Agreement (Eaton Decl. Ex. B (the "CBA") ). The Contract contains an Arbitration Clause which states:
Should any dispute or controversy arise between the parties hereto with reference to this contract, or the employment herein provided for, such dispute or controversy shall be settled and determined by conciliation and arbitration in accordance with and to the extent provided in the conciliation and arbitration provisions of the [CBA], and such provisions are hereby referred to and by such reference incorporated herein an made a part of this agreement with the same effect as though the same were set forth herein in detail.
(Contract ¶ 13.)
Section 50 of the CBA is entitled "Arbitration." (CBA § 50.) It states: "Disputes involving or relating to the right of termination of a performer's individual employment contract are not arbitrable, except ... with respect to ... body doubles." (CBA § 50(b).)
The CBA also sets forward a "Policy of Non-Discrimination and Diversity." (CBA § 59.) It indicates:
The parties hereto reaffirm their commitment to: a) a policy of non-discrimination an fair employment in connection with the engagement and treatment of performers on the basis of sex, race, color, creed, national origin, age, marital status, disability or sexual orientation, in accordance with applicable state and federal law; and b) to continue the active promotion of diversity, as set forth herein, in all categories of employment covered by this Agreement.
(CBA § 59(a)(1).) The section also contains an arbitration provision, stating that with one exception not applicable in this case, "the matters covered in this Section are *192 not subject to the provisions of Section 50 herein." (CBA § 59(d).)
II. DISCUSSION
A. Motion to Compel Arbitration[2]
1. Legal Standard
Section 4 of the Federal Arbitration Act "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement." AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (quoting 9 U.S.C. § 4.) "To determine whether the parties intended to submit a given matter to arbitration, the general rule is that courts 'should apply ordinary state-law principles that govern the formation of contracts.' " T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d Cir. 2010) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ).
Although agreements to arbitrate a dispute are generally construed broadly, see Application of Whitehaven S.F., LLC v. Spangler, 45 F.Supp.3d 333, 343 (S.D.N.Y. 2014), aff'd, 633 F. App'x 544 (2d Cir. 2015), "[c]ollectively bargained agreements to arbitrate statutory discrimination claims must be 'clear and unmistakable.' " Lawrence v. Sol G. Atlas Realty Co., 841 F.3d 81, 82 (2d Cir. 2016) (quoting Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80-81, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) ). The Second Circuit has described this standard as "exacting." Id. at 84. "Arbitration clauses that are 'very general,' mandating, for example, arbitration of all 'matters under dispute' are insufficient, because such language 'could be understood to mean matters in dispute under the contract'- and not necessarily statutory claims." Rasmy v. Marriott Int'l, Inc., No. 16-CV-04865 (AJN), 2017 WL 773604, at *10 (S.D.N.Y. Feb. 24, 2017) (quoting Wright, 525 U.S. at 80-82, 119 S.Ct. 391 ). "[E]xplicit incorporation of statutory antidiscrimination requirements" is necessary to meet the exacting standard applicable when a party seeks to compel arbitration in cases involving CBAs and discrimination claims. Wright, 525 U.S. at 80, 119 S.Ct. 391.
In this case, a straightforward reading of the agreements in question requires the Court to DENY Defendant's Motion to Compel Arbitration. The Court begins with the Contract's arbitration clause (Contract ¶ 13), which appears to contain a broad statement in favor of arbitration. However, the clause incorporates the CBA's arbitration provisions. The CBA too appears to favor arbitration because it states that disputes involving the termination of employment contracts of body doubles (like Plaintiff) are arbitrable. (CBA § 50(b).)
The non-discrimination provisions of the CBA, however, clearly exempt discrimination claims from the CBA's arbitration provisions. (See CBA § 59(d) ("the matters in this Section are not subject to the provisions of Section 50").) Thus, Plaintiff cannot be compelled to arbitrate her discrimination claims. There is not a "clear and unmistakable" statement that discrimination claims must be arbitrated.
Defendants attempt to argue that Section 59, the non-discrimination provisions, do not cover an individual employee's rights with respect to violation of employment laws. In making this argument, *193 they confuse the applicable legal standard. Even without the exemption contained in Section 59, Plaintiff could not be compelled to arbitrate her claims. The arbitration clause in Section 50 is broad, saying, in effect, disputes involving body doubles are arbitrable. (See CBA § 50(b).) However, to compel arbitration of discrimination disputes under a CBA, an arbitration clause must specifically name anti-discrimination statutes. See Wright, 525 U.S. at 80, 119 S.Ct. 391 ; Cox v. Perfect Bldg. Maint. Corp., No. 16-CV-7474 (VEC), 2017 WL 3049547, at *2 (S.D.N.Y. July 18, 2017) (example of clause referencing specific statutes where court compelled arbitration); Fernandez v. Windmill Distrib. Co., 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016). Accordingly, Defendants' Motion to Compel Arbitration is DENIED.
B. Rule 12(b)(6) Motion to Dismiss
1. Legal Standard for a Rule 12(b)(6) Motion to Dismiss
For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained,
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556-57, 127 S.Ct. 1955 ). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955 ). The Supreme Court further stated,
In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
Id. at 679, 129 S.Ct. 1937.
In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ; Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, 129 S.Ct. 1937, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, 127 S.Ct. 1955, are disregarded. Nor should a court "accept [as] true a legal conclusion *194 couched as a factual allegation." Id. at 555, 127 S.Ct. 1955. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).[3]
2. Title VII Retaliation Law
At the Motion to Dismiss stage, to establish a presumption of retaliation under Title VII, "a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.' " Littlejohn v. City of New York, 795 F.3d 297, 315-16 (2d Cir. 2015) (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) ). Under the first prong, "[a]n employee's complaint may qualify as protected activity, satisfying the first element of this test, 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.' " Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (quoting Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001) ). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).
Plaintiff has alleged sufficient facts to make out a Title VII retaliation claim. Six days after she complained to Rehwaldt about what she believed to be an incident of sexual harassment, she received notice that she was no longer needed as a body double on The Affair. Plaintiff alleges that she was given a flimsy explanation for this: she was dismissed because she did not have a good hair color match, despite the fact that she wore wigs during the duration of her role, and her replacement also wore a wig.
The Court need not consider whether the underlying discrimination complained of (the reference on the Call Sheet to "Alison Sexytime Double), standing alone, is enough to state a claim of unlawful discrimination. It is enough for Plaintiff to allege that she was fired in response to her protest to Rehwaldt that the Call Sheet reference was sexual harassment for her to state a claim under Title VII for retaliation.
3. Sex Discrimination under NYCHRL
For an employer's conduct to be actionable as hostile work environment sexual harassment, it "must be both objectively and subjectively offensive, such that a reasonable person would find the behavior hostile and abusive, and such that the plaintiff herself did, in fact, perceive it to be so." San Juan v. Leach, 278 A.D.2d 299, 717 N.Y.S.2d 334, 336 (2nd Dep't 2000) (citations omitted). If a reasonable person would consider the conduct to consist merely of "petty slights and trivial inconveniences," an employer can avoid liability under the NYCHRL. Williams v. New York City Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 41 (1st Dep't 2009). Courts must consider the "totality of the circumstances" in determining whether a workplace is hostile or abusive. Father Belle Community Ctr., 221 A.D.2d 44, 642 N.Y.S.2d 739, 744 (4th Dep't 1996) (citations omitted).
*195 Because the NYCHRL is designed to be broadly remedial, liability for sexual harassment under the NYCHRL is determined by the existence of any unequal treatment, and questions of severity and frequency are reserved for the consideration of damages. Williams, 872 N.Y.S.2d at 38 (citing Farrugia v. North Shore Univ. Hosp., 13 Misc.3d 740, 820 N.Y.S.2d 718, 718 (Sup. Ct. 2006) ).
But the NYCHRL, like Title VII and the NYSHRL, is still not a general civility code. "[P]etty slights and trivial inconveniences are not actionable." Davis-Bell v. Columbia Univ., 851 F.Supp.2d 650, 671 (S.D.N.Y. 2012) (internal quotation marks omitted); see also Bermudez v. City of New York, 783 F.Supp.2d 560, 579 (S.D.N.Y. 2011) (under NYCHRL, conduct need not be "severe or pervasive" to constitute a hostile work environment, but " 'petty, slight, or trivial inconvenience[s]' are not actionable"). Isolated incidents of unwelcome verbal conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable, even under the liberal NYCHRL standard.
This Court's interpretation of the NYCHRL is guided by Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009), which discusses how the NYCHRL was changed by the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"). See 2005 NY City Legis. Ann., at 528-535. The Restoration Act modified the construction provision of the NYCHRL, so that the NYCHRL "now explicitly requires an independent liberal construction analysis in all circumstances ... targeted to understanding and fulfilling what the statute characterizes as the [NYCHRL's] 'uniquely broad and remedial' purposes, which go beyond those of counterpart state or federal civil rights laws." Williams, 872 N.Y.S.2d at 31. According to Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102 (2d Cir. 2013), to "establish a ... discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender,' " race, religion, or national origin. Mihalik, 715 F.3d at 110 (quoting Williams, 61 A.D.3d at 78, 872 N.Y.S.2d 27 ). "The challenged conduct need not even be 'tangible' (like hiring or firing)." Id. (quoting Williams, 61 A.D.3d at 79, 872 N.Y.S.2d 27 ); see also Emamian v. Rockefeller University, No. 07-CV-3919 (DAB) Court Order Feb. 2, 2018 at 7 (S.D.N.Y.). Thus, the NYCHRL is to be construed more broadly than federal civil rights laws and the NYSHRL; its provisions are more remedial than both. Williams, 872 N.Y.S.2d at 36-7.
Plaintiff's allegations are sufficient to survive a motion to dismiss. Indeed, all that is required under the NYCHRL is that she proffer evidence of "unwanted gender-based conduct," Williams, 872 N.Y.S.2d at 38, which she has fulfilled.
Defendants' Motion to Dismiss this count is DENIED.
4. Retaliation under NYCHRL and NYSHRL
Under the NYSHRL (as is true under federal law), a plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. See Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 446 (2d Cir.1999) ; McMenemy v. City of Rochester, 241 F.3d 279, 283 n. 1 (2d Cir.2001). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities."
*196 Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000). Examples of a materially adverse change include the "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id.
An adverse employment action under the NYCHRL has the same definition as an adverse employment action under the NYSHRL. Hanna v. New York Hotel Trades Council, 18 Misc.3d 436, 851 N.Y.S.2d 818, 825 (N.Y.Sup.Ct.2007) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2nd Cir.2000) ). However, unlike retaliation under the NYSHRL, retaliation under the NYCHRL need not result in an ultimate action with respect to employment or in a materially adverse change. Instead, the retaliatory act that the plaintiff complains of must "be reasonably likely to deter a person from engaging in protected activity." Kumaga v. New York City School Const. Authority, 27 Misc.3d 1207A, 910 N.Y.S.2d 405 (Sup. Ct. 2010). Plaintiff must show a "causal link" between the protected activity and the retaliatory act. Id.; see Williams, 872 N.Y.S.2d at 29 (2d Cir.2009) (NYCHRL claims); Albunio v. City of New York, 67 A.D.3d 407, 889 N.Y.S.2d 4, 9-10 (1st Dep't 2009) (listing the elements of a retaliation claim under NYCHRL).
Plaintiff has a lower burden to show retaliation under the NYCHRL. In Sorrenti v. City of New York, the New York Supreme Court recognized that the standard for defining retaliatory acts is different under City and federal antidiscrimination laws. 17 Misc.3d 1102(A), 851 N.Y.S.2d 61 (Sup. Ct. 2007). Specifically, the court held that after the Restoration Act's passage, "it is now illegal [under the NYCHRL] to retaliate in any manner" after an employee engages in protected conduct, i.e. a showing of a "materially adverse employment action" is not required. Id.
Plaintiff has alleged that she was retaliated against in response to her spoken opposition to the Call Sheet, when she told Rehwaldt that he was engaging in sexual harassment. It is reasonable for the Court to infer a causal connection between Plaintiff's dismissal and her complaint six days prior, and that Plaintiff's dismissal was a retaliatory response to her complaint. Under both the NYCHRL and the NHSHRL, Plaintiff states a claim.
Defendant's Motion to Dismiss Plaintiff's retaliation claims under the NYCHRL and the NYSHRL are DENIED.
III. CONCLUSION
Defendants' Motion to Compel Arbitration and Defendants' Motion to Dismiss are DENIED.
SO ORDERED.

Plaintiff does not explain who told her this in her Complaint.

In addressing the Motion to Compel Arbitration, the Court considers the Contract and the CBA. See Faggiano v. CVS Pharmacy, Inc., 283 F.Supp.3d 33, 34 n.1 (E.D.N.Y. 2017) ("The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration.").

The Call Sheet is incorporated by reference in the Complaint because the Complaint makes "a clear, definite and substantial reference to the document[ ]." Helprin v. Harcourt, Inc., 277 F.Supp.2d 327, 331 (S.D.N.Y. 2003) ; see Compl. ¶¶ 43-50.